All right, Mr. Bergman, we'll hear from you first. Thank you, Your Honor. May it please the court and counsel, in this case, the government failed to carry its burden that Pah Peh, a lawful permanent resident, is deportable for having been convicted of a crime of child abuse. The Board of Immigration Appeals, using the categorical approach, correctly found that the Iowa offense of enticing is overbroad with the ground of deportation for child abuse. What we ask you to do today is to find that the BIA erroneously affirmed the IJ on the realistic probability ground, find the realistic probability ground has been met, if it needs to be met, and because this child abuse charge is the only deportation charge left on the notice to appear, dismiss the notice to appear or remand it to the IJ for him to dismiss it. So there is some disagreement between the parties as to what the BIA held, but I think it's pretty clear when you read their decision at the end. Iowa Code section 710.10 sub 3 is overbroad when compared to INA 237 A2E1, which is the crime having been convicted of a crime of child abuse. I don't think that there is a dispute between the parties as to what has to be done in that conviction in order to trigger that deportability clause. It's a matter of Velasquez Herrera. It says any offense involving intentional, knowing, reckless, or criminally negligent actor admission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation. The conviction in question here is enticing under Iowa Code section 710.10 sub 3. The code section isn't super helpful, but the jury instructions are, which says in so many terms that the least culpable conduct in this case, which is required under Moncrief, DeKalb, all those cases, is tempting a minor under the age of 16 to commit an illegal act. Again, the BIA agrees with this, that this section is overbroad. Therefore, under the categorical approach, it means that it does not trigger the deportability section because if my fat head is the deportability section, this is where the enticing is. It's more than my fat head, and there's acts that can constitute a conviction that are more than the deportability section. Now, where the BIA goes wrong, it says the realistic probability, quote unquote, requirement has not been met. So this comes to us from the Duenas-Alvarez case, and it's important to know exactly how that case comes up. Some really clever attorney said, well, there's no federal statute for theft, so we have to go off the generic and common law version of theft. And that does not include non-permanent takings. And in California, that can also be committed by aiding and abetting. So if my client, says clever attorney, aids and abets a theft that includes a non-permanent taking, does that trigger that statute? And in that case, the Supreme Court held that there needs to be a realistic probability that the state would actually convict a person under that theory. We argue that the realistic probability test is superfluous here. While the term illegal acts covers a lot, it's not an ambiguous term. We all know what's illegal. One example would be if my 14-year-old stepdaughter is on her learner's permit, which she is, and she gets on the interstate, and there's an officer pulled over to the side, I might encourage her that she needs to speed up, hell or high water, regardless of the speed, to get around that officer. Now, it is illegal to speed. It is illegal to speed. And I do know my stepdaughter is under 16. Well, here's my question on your hypothetical. How is that committing an illegal act upon the stepdaughter? Because she is the one that's doing it, Your Honor. I know. That's my question. How are you committing an illegal act upon her if she speeds? Because I'm the one enticing her. But you have to entice with the intent to commit an act upon her under the statute. And so my question is, what intent did you have to commit an illegal act upon her? Because I am the one supervising her driving. I have a legal obligation, too, as the supervisor of her driving. And I'm committing the speeding upon her, too. So one way to bring this around is to think about, for instance, this realistic probability is, could I be charged with child endangerment if we up the hypothetical? Right? If I tell my stepdaughter to go 120 miles an hour through downtown Des Moines, would that subject me to child endangerment? Yes. And I'm committing that upon her. So in that case, I understand your question, Your Honor. I would say child endangerment could be the crime upon her. But I think the speeding is, too. All right. I have another question for you. You say the board acknowledged that the statute is overbroad. But you seem to be relying on a sentence where they say, we acknowledge your argument that the law is overbroad. Why isn't that just an acknowledgement of the argument, as opposed to a conclusion that the law is overbroad? Because they go on to say that because the respondent, I'm trying to find it right here. It's on page three of the board's opinion, line five. We acknowledge the respondent's argument that the Iowa law is overbroad. I mean, it's just not helpful for you to say, well, the board held right there that the law is overbroad, when it's obviously a statement that they're acknowledging your argument that the law is overbroad. But if you look at the IJ's decision, the IJ says... We're not reviewing the IJ. We're reviewing the board. I understand that, Your Honor. But respectfully, if we look at how the case goes up, the IJ held that it was not overbroad, right? So then it goes up to the BIA, the parties brief it, and the board has this in front of it where the IJ says that it's not, right? So if they agree with the IJ, they would have put that in there, right? I don't know. I would suggest they would, especially when you look... We just review what they say. Well, let's look at the middle of the page where they recognize that it's overbroad. And they say in the middle of the page, the respondent has not established a realistic probability. They're hanging their head on realistic probability. And as you note, Your Honor, that's fine. You're reviewing the BIA. But this is overbroad. Is your speeding example the reason why you think that you committed speeding upon your stepdaughter and that's your argument? Yes, Your Honor, because any illegal act can trip the deportation section. I'm not familiar with an Iowa law that forbids a person to commit speeding upon another person. Your Honor, it's in the code and I'm reading it. It's 710.10 sub 3. No, I just don't understand how you commit speeding upon another person. I don't know how else to explain it, Your Honor. OK. But, I mean, let's think about this. So there's the word upon, right? But we know what illegal acts are, right? So what I argue that Your Honor should do, and I'm only going to leave a minute for rebuttal, is that, first of all, this term is not ambiguous. I ask you to join your sister courts. And I have them all listed here. I believe it's the 2nd, 3rd, 9th, and 11th, and find that the realistic probability test is not necessary when there's an unambiguous term. And in this case, it is unambiguous that this enticing charge is overbroad. And that is the end of it. And he is not deportable under that section. Thank you, Your Honor. Are you familiar with State v. Holtz? Yes, Your Honor. I have read State v. Holtz. All right. Well, that kind of gets to the issue I'm concerned about, where they hold that you cannot commit possession of marijuana upon a minor. I understand. And I wonder whether the same analysis applies to your speeding hypothetical. Well, if I could address that briefly, Your Honor. I think this gets to the problem with the realistic probability test, is that instead of looking at the statute in its plain terms, what we do instead is look at the cases that happen to go up on appeal, and the issues that are before the Iowa Supreme Court and Court of Appeals in that case. Right? The only reason we're worried about Holtz is to go to the realistic probability. And I'm saying we don't need to go to the realistic probability at all. If that was required, Mr. Pape would have had to plead guilty, then appeal to the Iowa Supreme Court, which, by the way, is not allowed anymore, to get a decision from the Supreme Court to determine if the statute applied to him in this way. Is that what's required here? I would urge you not to require that, Your Honor. All right. Thank you for your argument. Mr. Finn, we'll hear from you. Yes, thank you, Your Honor. To give you a roadmap of our argument here today, Your Honor, our position is that the categorical approach applied, that the board did, in fact, apply the categorical approach. It affirmed the immigration judge's determination that, in fact, the statute was not overbroad, that is, the Iowa statute. And then it went further because of the argument petitioner made, which was that the statute was overbroad, and it addressed the reasonable probability test. The death camp shows clearly that the issue for the elements test is we're looking to see if there is an element missing in the state offense from the generic federal offense. And here, under the Velazquez-Herrera standard for child abuse under Immigration Nationality Section 237, the crime of child abuse is quite broad. And as further developed by Sorum and Mendoza-Sorio, the risk of harm, excuse me, the issue of physical harm and mental and emotional harm can be slight. Now, I won't go into the actual elements of the federal offense because that has not really been the issue in this case. The issue has been the definition of illegal acts and how that is applied in the Iowa statute. And I think where we find an issue is the confusion between the actus reus and the mens rea of the Iowa Code Section 710.3. And there, the actus rea is an overt act to entice a minor. The mens rea is the specific intent to commit an illegal act upon a minor. So the way I think Petitioner frames it confuses the two elements. In fact, we do not talk about enticing a minor with the specific intent of committing disorderly conduct or of, you know, the other examples that he gave, harassment of the child. The question is, the specific intent is an illegal act directed itself at the child. Well, why couldn't a person, hold on a second, you just brought up disorderly conduct and harassment, which I think are much better arguments for the alien than speeding. And so for some reason, speeding was the one chosen today. But I want to ask you about disorderly conduct and harassment. Why couldn't a person entice a minor to go to a place and intend at the time then to harass the minor or cause unreasonable distress for the minor, which would be disorderly conduct? When I looked at the disorderly conduct statute, it was disorderly conduct in a public place. And it did not have the element of being directed at the child itself. And that was the problem I saw with the elements of the disorderly conduct statute, at least as they were laid out in the brief by Petitioner. It was a very broad, it was not the specific type intent that we're talking about. Well, in other words, I was hoping maybe you would have looked at the statute, but the statute itself says a person commits disorderly conduct if he makes loud and raucous noise in the vicinity of any residence or public building, which causes unreasonable distress to the occupants thereof. So query, what if the alien enticed a minor to enter into a public building and then made loud and raucous noise in the vicinity of the minor causing unreasonable distress? Wouldn't that violate the disorderly conduct, I mean, the enticement statute, theoretically? Yes, but I think that then we could argue it. Go ahead. I think it would then fall within the generic federal offense, which talks about physical or emotional harm, however slight, to a child. That's possible. That's not maybe what the board said, but you're saying that you think it would, you think unreasonable distress would qualify as child abuse? Under the generic federal offense, I believe it is broad enough to read the specific intent element in the Iowa statute as falling within the federal generic offense. Yes. Do you think illegal act really covers every illegal act, or do you think it's narrower in the Iowa statute? Do you have a view on that? I believe under the Holtz case that you cited, Your Honor, yes. I think that in that case, it was a possession of marijuana charge that was used as the specific intent element. And the court came back and said that that was not the type of specific intent that the statute was intended to apply. In the other cases, the Scott case and the Quinn case dealt with specific intents to commit sexual abuse of marijuana. In those cases, those cases were both affirmed. Now, that kind of jumps us to a bit of the reasonable probability analysis. But I know Your Honor brought up Holtz earlier, and I believe Holtz's analysis would fall squarely within the court's question that, yes, the Iowa Supreme Court, at least, in looking at the Holtz case, determined that there were some illegal acts that did not fall within the illegal acts for the specific intent element. First of all, that was the Iowa Court of Appeals, not the Iowa Supreme Court. They didn't say possession of marijuana is not an illegal act. They said it's not an illegal act committed upon a minor. My question was different, which is whether there are certain illegal acts like disorderly conduct or harassment that are misdemeanors that can be committed upon another person that would nonetheless be outside the meaning of illegal act, or whether they are encompassed. That was my question. And unfortunately, there's no real statutory or case law that actually answers that question, that I am aware of. I'm aware of that, too. I was just... At this point, Your Honor, if I could just briefly address the reasonable probability test. Because of the way the issue was raised before the board, which is an argument for overbreath, the court, following Dwayne Adalpha and Longcroft, then addressed the reasonable probability test, although arguably it didn't need to. And in addressing reasonable probability, of course, addressed the Scott Quinn and Holtz cases that we have discussed, finding that there had not been a showing, there is not a showing within the Iowa case law that establishes the fact that there is a reasonable probability of application of the Iowa statute for child abuse that would exceed the scope of the generic federal definition for child abuse. The reasonable probability, for our purposes, we believe that the court itself determined the case on the categorical approach. But the completeness of the court board's analysis was in doing the reasonable probability test itself. The immigration judge did not reach the question of reasonable probability, and the board itself did that analysis. Why don't we call it what the board calls it, realistic probability? Realistic probability, yes, realistic probability. But nonetheless, the board, in affirming, found no other evidence, indication that there was anything that would suggest that there was a reasonable probability that Iowa would apply the statute more broadly. And I think the Holtz case, as the court noted, is the critical case in that analysis. Unless the court has other questions, that completes my presentation today. All right. Thank you for your argument. Mr. Bergman, we'll give you a couple minutes for a final comment. I appreciate that, Your Honor. Thank you. In this case, regardless of whether the BIA held it or not, the statute is overbroad. We argue it is overbroad under the plain terms of the statute. And I will accept the criticism that the disorderly conduct example is better, and I'll withdraw the speeding one. I'll go with the disorderly conduct. It is overbroad. As far as the reasonable probability test, we see here the weakness in that, and that I have to dig through, or Pape has to dig through all the district courts in Iowa, and find everyone that's been convicted of enticing, and figure out the way in which they've been convicted, or if they've happened to go on appeal. I don't think that that's required here, especially in a case where the government has the burden, when it's a deportation proceeding against a lawful permanent resident. So therefore, we ask you to join your sister courts and say that in a case like this, where we can read the statute and know what it means, we don't need to have a realistic probability. We're not threading the needle in this Dwayne Yisalvarez style with a common law theory, and an aiding and abetting, that we don't need to do the realistic probability. And Your Honor, I do need to put you on notice that the Second Circuit case we cited has been the realistic probability test is not needed when it's clear from the statute that it's overbroad. So Your Honor, we ask you to find in this case that the statute's overbroad, that any realistic probability test is met, and that you remand this to the BIA for dismissal of the notice to appear, because it's the only count left requiring his deportation. Why is the statute overbroad based on the disorderly conduct hypothetical? Your counterpart says, if you intend to cause unreasonable distress to a minor, you're committing child abuse within the meaning of the generic federal definition. What's wrong with that? Your Honor, I think that there is something wrong with that, because unreasonable is a bit of a making a loud and raucous noise, inviting a child to make a loud and raucous noise and be involved in it. There you're back to the problem with that's not upon the minor, but thank you for your argument. Thank you, Your Honor. The case is submitted and the court will file an opinion in due course. Thank you to both.